FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2012 MAY 17 P 3:36

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| ALLIED INTERNATIONAL CORP )<br>OF VIRGINIA )<br>Allied International Corp. of Virginia )<br>PO Box 858 )<br>Ashburn, VA 20146 )<br>)<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>NEW ENGLAND CONFECTIONERY )<br>COMPANY, INC. )<br>135 American Legion Highway )<br>Revere, MA, 02151 )<br>)<br>Serve: )<br>)<br>)<br>The Corporation Trust Company )<br>Corporation Trust Center )<br>1209 Orange Street )<br>Wilmington, DE 19801 )<br>)<br>Defendant. )<br>) | Case No. 1:12cv540<br>LO/JFA |

## COMPLAINT AND APPLICATION FOR
## PRELIMINARY AND PERMANENT INJUNCTION

Plaintiff, Allied International Corporation of Virginia (sometimes "Allied" of "Plaintiff"), through counsel, hereby files this Verified Complaint against New England Confectionery Company, Inc. ("NECCO" or "Defendant"), and states in support as follows:

## Parties

1.      Plaintiff Allied is a Virginia corporation, with its principal mailing address of P.O. Box 858, Ashburn, VA 20126, and a business street address of 101 Dover Road, N.E., Glen Burnie, MD 21060, which owns and sells various candy products, including products under the registered trademark Cambridge and Thames® ("Cambridge and Thames®").

2.      Defendant NECCO is a Delaware corporation with its principal place of business located at 135 American Legion Highway, Revere, MA 02151.

## Jurisdiction and Venue

3.      This is an action for trademark infringement and unfair competition under the Trademark Laws of the United States (15 U.S.C. § 1051 et seq.), for related claims, for breach of contract and related claims under applicable state law, and for injunctive relief.

4.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 1338(b), and 28 U.S.C. §1367.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the defendant contracted to do business with plaintiff in this district, and because all or a substantial part of the acts or omissions giving rise to this suit took place in this district.

## Facts

6.      Allied registered Cambridge and Thames® on October 12, 2004, first using the mark in commerce on July 1, 2002. At the time Allied registered Cambridge and Thames® it had been selling candy under that trademark for several years and has

continued to sell candy under that trademark since its first use of the trademark in 2002. Allied sells its Cambridge and Thames® products nationwide, and has done so since inception of the mark. Since the mark's first use and later registration, Cambridge and Thames® has become known throughout the country as an Allied candy product.

7. Allied is the owner of the trademark "Cambridge and Thames®" and has duly and properly registered the service mark with the United States Patent & Trademark Office in the Principal Register. The mark, registered for eight years and owned by Allied, covers goods described under International Class 30 as it relates to candy. Allied commenced use of the mark "Cambridge and Thames®" at least as early as July 1, 2002. A true and correct copy of the Trademark Registration for Cambridge and Thames® is attached hereto and incorporated herein by reference as Exhibit 1.

8. As a result of Allied's usage and promotion of goods since 2002 under the mark Cambridge and Thames®, it has developed good will associated with this mark.

9. Pursuant to the Lanham Act, Allied's federal registration of Cambridge and Thames® constitutes prima facie evidence of: (a) the validity of the mark and the registration of the mark; (b) Allied's ownership of the mark; and (c) Allied's exclusive right to use the mark in connection with the goods specified in the registration. In addition, Allied's registration constitutes constructive notice of Plaintiff's claim to ownership of the Cambridge and Thames® mark.

10. Allied and NECCO had a long-standing relationship whereby NECCO would produce products on behalf of Allied, for sale under Allied's trademarks, including Cambridge and Thames®.

11. Allied bought various other candy products from NECCO as well, over 20 years.

12. Allied itself resold all of the NECCO product to retailers. In particular, Allied cultivated a strong relationship with Dollar General stores over the years.

13. Allied frequently and regularly requested NECCO to ship purchased product to Dollar General. Allied would buy NECCO's candy through purchase orders, and then fill such purchase orders with purchases from NECCO.

14. This relationship continued for years to the mutual benefit of both parties. On many occasions NECCO officials, including Dom Antonellis, Jack Chiado, Hans Becher, Tom Barnes, Steve Ornell and Alan Gulachenski, provided assurances that such relationship would continue and that Allied could rely on NECCO as a supplier.

15. Allied obtained orders from Dollar General for the year 2012, and prepared to fill such orders through NECCO. The total outstanding amount of such Allied orders to be delivered to Dollar General during 2012 totaled approximately $3,600,000 based on historical data for prior years and pending orders as of February 7, 2012. In fact, Allied ordered product from NECCO to fulfill such orders, and arranged for trucks to arrive at NECCO's manufacturing facility in Massachusetts between February 7, 2012 and February 21, 2012 to retrieve some of NECCO's product.

16. When trucks arranged by Allied arrived to pick up the products though, NECCO informed Allied's drivers that NECCO had cancelled its contract with Allied, and was dealing directly with Dollar General, and no products were picked up. The total price to Dollar General for these orders to be picked up was $180,117.84.

17. Subsequently, NECCO complained that NECCO had not been making a profit distributing its candy products through Allied's distribution centers, that Allied was late making payments, and thus instead NECCO wished to distribute its products directly to customers. All this was pretextual, and false and misleading, and designed to rationalize NECCO's termination of its agreement with Allied. Allied's credit situation and payable situation had not changed appreciably over the years, and Allied had expedited payment on various shipments during 2011 at NECCO's request.

18. Upon information and belief, in furtherance of NECCO's decision to distribute/sell candy directly to customers, cutting out Allied in the process, NECCO sold 30,531 cases of the 24 packed Cambridge & Thames 5 oz box thin mints, and 16,660 cases of the 12 packed Cambridge & Thames 5 oz box thin mints, totaling approximately 932,664 units of candy bearing the Cambridge and Thames® trademark, directly to Family Dollar stores in North Carolina and possibly elsewhere, without the authorization of Allied, during 2011. NECCO sold the units at a lower price than Allied's price resulting in lost profits in the amount of $307,779.12.

19. Upon information and belief those 932,644 units NECCO sold are identical to those offered by Plaintiff under the Cambridge and Thames® mark. See email confirming the details received from ex-employee Mr. Jack Chiado attached hereto as Exhibit 2. Upon information and belief, NECCO did not begin the use of the Cambridge and Thames® until nearly ten years after Allied's first use of Cambridge and Thames® in commerce, and some eight years after Allied's registration of Cambridge and Thames®.

20. NECCO's use of the mark "Cambridge and Thames" on packaging for the 932,664 units sold is identical to Allied's registered mark. NECCO sold such infringing goods to Allied's customer, the Family Dollar stores, operating as many as 7,000 stores in 44 states, in the same region that Allied routinely sold its Cambridge and Thames® products, such as in North Carolina and possibly other territories. Furthermore, Allied has acquired superior common law rights to the mark "Cambridge and Thames," as Allied's use of that mark predates NECCO's use of that mark by nearly ten years.

21. NECCO's use of the mark "Cambridge and Thames" was a direct infringement of Allied's mark, is likely to cause confusion, mistake, and/or deceive members of the public as to a connection or affiliation with Cambridge and Thames®, and otherwise constitutes unfair competition. The marks are identical, and no consumer can differentiate the two as NECCO used Allied's trademark in selling the offending 932,664 units.

22. Any consumer of Cambridge and Thames® candy would be unable to differentiate between Allied's product and those infringing goods sold by NECCO; the packaging for both is identical.

23. NECCO, in response to a complaint from Allied about the units impermissibly sold, filed a complaint in the United States District Court for Massachusetts instead raising contract and quasi contract claims.

26. NECCO has committed acts of trademark infringement by its use of the "Cambridge and Thames" mark.

27. Upon information and belief, some or all of the principals, directors or owners of Defendant NECCO acted willfully and deliberately, or have been carried with

6

a willful blindness or reckless disregard of Allied's federally registered mark and the common law rights of Allied, in selling the 932,664 units of candy bearing the Cambridge and Thames mark. The principals, directors or owners of NECCO had been doing business with Allied for years and were aware that Allied owned the mark, Cambridge and Thames® and had been selling candy to customers under that mark for nearly ten years. NECCO and its agents would almost assuredly know about Allied's Cambridge and Thames®'s business and reputation.

28. Upon information and belief, NECCO's adoption and use of the name "Cambridge and Thames" on the 932,664 units sold was undertaken in bad faith and in disregard of the resulting damage and injury to Allied and its trademark, and with an intent to confuse or deceive the public.

29. Allied only found out about NECCO's use of the Cambridge and Thames mark during late 2011 and 2012 after NECCO wrongfully terminated its arrangements with Allied and cut Allied out of shipments to Dollar General.

### (Count I)
### Federal Trademark Infringement 15 U.S.C. § 1114 et seq.

30. Allied repeats and incorporates by reference each and every allegation set forth in the other paragraphs of this Complaint, inclusive.

31. NECCO's activities as described herein in shipping Cambridge and Thames® candy constitute infringement of Allied's federally registered trademark in violation of the Lanham Act.

32. Because Allied has marketed, advertised, promoted, and sold goods under the trademark Cambridge and Thames® as described in the Complaint, this trademark is

one of the means by which Allied's goods are distinguished from those of others in the same field or related fields.

33. Because of Allied's long, continuous, and exclusive use of this trademark, it has come to mean, and it understood by clients and the public in North Carolina and throughout the country, to signify candy products sold by the Allied.

34. NECCO's use of the mark "Cambridge and Thames" has caused confusion, mistake or deception as to the source, origin or quality of goods provided.

35. Further, NECCO's use of the mark "Cambridge and Thames" is likely to lead the public to conclude, mistakenly, as to the source or nature of the candy being provided by NECCO, which conduct harms Allied, its customers, and the public.

36. As a result of NECCO's wrongful conduct, it is liable to Allied for trademark infringement under the Lanham Act, as Allied has suffered damages and losses, including but not limited to lost Allied's lost profits, and damage and injury to Allied's business reputation and goodwill. Allied is entitled to recover damages under the Lanham Act, which include Allied's losses, and any and all profits NECCO has made as a result of its wrongful conduct.

37. NECCO's infringing conduct is willful, knowing, and in bad faith, with an intent to confuse or deceive the public.

38. Allied is also entitled to recover attorneys' fees under the Lanham Act, together with all costs of this suit.

### (Count II)
### Federal Unfair Competition

39. Allied repeats and incorporates by reference each and every allegation set forth in the other paragraphs of this Complaint, inclusive.

40. NECCO's use of the mark "Cambridge and Thames" is likely to cause confusion or cause mistake or to deceive as to the affiliation, connection, or association of NECCO or its candies with the Allied, or as to the origin, sponsorship, affiliation or approval of NECCO's candies.

41. NECCO's conduct, as set forth herein, constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

42. NECCO's conduct is willful, knowing, and in bad faith, with an intent to confuse or deceive the public.

43. As result of NECCO's conduct, Allied has suffered injury to its goodwill, reputation, which damage continues, is intangible and cannot be calculated. Allied has been damaged in the amount of profits realized by NECCO from its offering of goods under the identical trademark, "Cambridge and Thames" to those offered by the Allied. NECCO's illicit gain and profits are unknown at present.

### (Count III)
### Federal Dilution

44. Allied repeats and incorporates by reference each and every allegation set forth in the other paragraphs of this Complaint, inclusive.

45. Allied's Cambridge and Thames® mark is a distinctive mark.

46. NECCO's adoption and use of the name "Cambridge and Thames" was undertaken in bad faith and in disregard of the resulting damage and injury to Allied and its trademark.

47. NECCO's conduct, as described above, constitutes dilution of the distinctive quality of the famous Cambridge and Thames® mark, in violation of 15 U.S.C. § 1125(c).

48. NECCO's conduct is willful, knowing, and in bad faith, with an intent to confuse or deceive the public.

49. Allied has suffered actual damages as to which there is no adequate remedy at law.

### (Count IV)
### Common Law Unfair Competition

50. Allied repeats and incorporates by reference each and every allegation set forth in the other paragraphs of this Complaint, inclusive.

51. NECCO's activities are likely to cause confusion among the public by creating the false perception that the goods being offered by NECCO are sponsored, approved, or authorized by Allied in violation of Allied's rights in its mark Cambridge and Thames® under the common law of unfair competition in Virginia.

52. NECCO's activities as set forth in this Complaint constitute unfair competition under the common law of Virginia.

53. As result of NECCO's conduct, Allied has been suffered injury to its goodwill, reputation, and has been damaged in the amount of profits realized by NECCO from its offering of goods identical to those offered by the Allied. NECCO's illicit gain and profits are unknown at present. NECCO's conduct is willful, knowing, and in bad faith, with an intent to confuse or deceive the public.

### (Count V)
### Accounting

54. Allied repeats and incorporates by reference each and every allegation set forth in the other paragraphs of this Complaint, inclusive.

55. Pursuant to the Lanham Act, 15 U.S.C. § 1117, Allied is entitled to recover any and all profits of NECCO that are attributable to its acts of infringement.

56. Under the Lanham Act, Allied is entitled to actual or statutory damages sustained by virtue of NECCO's acts of infringement.

57. The true amount of money owed by NECCO to Allied is unknown and cannot be established without a detailed accounting by NECCO of the goods it has sold bearing the infringing "Cambridge and Thames"® mark. NECCO is aware of at least 932,664 units of chocolates that NECCO sold under the Cambridge and Thames® mark, which Allied would have sold at 89 cents per unit.

### (Count VI)
### Imposition Of Constructive Trust
### Upon Illegal Profits Of Defendant

58. Allied repeats and incorporates by reference each and every allegation set forth in the other paragraphs of this Complaint, inclusive.

59. NECCO's conduct as set forth in this Complaint constitutes deceptive, fraudulent, and wrongful conduct in the nature of selling goods in such a way as to cause confusion among the public by creating the false perception that the goods sold by NECCO were sponsored, approved, or authorized by Allied.

60. As a result of NECCO's wrongful conduct, NECCO has received, illegally, money and profits rightfully belonging to the Allied.

61. Upon information and belief, NECCO and its officers hold the illegal money and profits in bank accounts, real property or personal property that can be located and accounted for.

62. NECCO holds such money and profits that it has illegally received in the form of a constructive trust for the benefit of Allied.

### (Count VII)
### Breach of Contract

63. Allied repeats and incorporates by reference each and every allegation set forth in the other paragraphs of this Complaint, inclusive.

64. Allied received orders from Dollar General during 2011 and early 2012, and in turn placed valid orders with NECCO to fill Allied's orders. NECCO's acceptance of orders had always resulted in sales, and Allied arranged for trucks to be sent to Massachusetts to retrieve the product. Allied's orders placed with and accepted by NECCO for reshipment to Dollar General, which Allied arranged for pick-up, totaled $180,117.84 for orders that were cancelled and, based on information and belief, shipped to Dollar General directly.

65. Rather than complete its purchase, NECCO wrongfully cancelled such orders and shipped product to Dollar General directly.

66. NECCO's conduct constitutes a breach of contract, which caused Allied damages in terms of lost revenue.

### (Count VIII)
### Tortious Interference With Contract

67. Allied repeats and incorporates by reference each and every allegation set forth in the other paragraphs of this Complaint, inclusive.

68. Allied received orders from Dollar General during 2011 and early 2012, which represented contracts with Dollar General. NECCO was aware of such purchase order contracts. NECCO intentionally interfered with Allied's contracts by selling its product directly to Dollar General, despite purchase orders accepted through Allied, circumventing Allied's sales and causing Dollar General to cease doing business with Allied. NECOO's actions were wrongful in breach of its own contract and deceitful, in that NECCO had long promised Allied to sell to Allied and not Allied's customers. As a result of NECCO's tortious interference, Allied suffered damages.

69. NECCO's conduct constitutes tortious interference with contract, which caused Allied damages in terms of lost revenue.

### (Count IX)
### Tortious Interference With Expected Contractual Relations

70. Allied repeats and incorporates by reference each and every allegation set forth in the other paragraphs of this Complaint, inclusive.

71. Allied received orders from Dollar General during 2011 and early 2012, which represented contracts with Dollar General. Allied was reasonably certain that at least for 2012 its total business would have equaled approximately $3.6 million, based on Allied's pipeline of sales with Dollar General. NECCO was aware of such purchase order contracts. NECCO intentionally interfered with Allied's contracts by badmouthing Allied with Dollar General based on Allied's purported poor payment history (which was false) selling its product directly to Dollar General, suddenly and without notice terminating its contract with Allied, and by circumventing Allied's sales and causing Dollar General to cease doing business with Allied. NECOO's actions were wrongful in

breach of its own contract and deceitful, in that NECCO had long promised Allied to sell to Allied and not Allied's customers. As a result of NECCO's tortious interference, Allied suffered damages.

72. NECCO's conduct constitutes tortious interference with contract, which caused Allied damages in terms of lost revenue.

WHEREFORE, Plaintiff, Allied International Corporation of Virginia, respectfully requests that this Court enter judgment in its favor and against Defendant New England Confectionery Company, Inc., under Allied's Counts I through IX as follows:

1. That the Court enter a judgment against Defendant that it has:

a) willfully infringed upon Plaintiff's federally registered trademark, Cambridge and Thames®, in violation of 15 U.S.C. § 1114; and

b) willfully engaged in unfair competition in violation of 15 U.S.C. § 1125(a); and

c) otherwise engaged in false and deceptive trade practices in violation of Plaintiff's common law rights to the marks Cambridge and Thames®; and

d) otherwise injured the business and reputation of the Plaintiff by Defendant's actions and conduct as set forth in this Complaint;

2. That the Court enter an Order of Constructive Trust, declaring that Defendant holds in trust, as a constructive trustee for the benefit of the Plaintiff, all illegal

profits obtained from Defendant's use and adoption of a mark that infringes upon Plaintiff's federal and state trademark rights;

3. That the Court enter an Order requiring Defendant to provide Plaintiff with a full and complete accounting of all profits obtained from Defendant's use and adoption of a mark that infringes upon Plaintiff's federal and state trademark rights;

4. That the Court enter an Order directing Defendant to pay Plaintiff's general, special, actual and statutory damages, including, but not limited to:

a) Plaintiff's damages and Defendant's profits pursuant to 15 U.S.C. § 1117(a) for Defendant's willful violation of Plaintiff's federally registered trademark; and

b) Plaintiff's damages and Defendant's profits pursuant to common law;

c) Plaintiff's attorney's fees and costs incurred as a result of bringing this action;

d) Pre-judgment and post-judgment interest;

e) Punitive damages of $634,000, plus $307,000, for the sale of Cambridge & Thames product, and also in light of the gain received by Allied under Plaintiff's tortious interference count;

7. That the Court grant Plaintiff such other legal and equitable relief as it deems proper.

Respectfully submitted,

Dated: May 17, 2012.    By: _____
George R.A. Doumar (26490)
James R. Harpold (74967)
Doumar Martin, PLLC

2000 N. 14th Street, Suite 210
Arlington, VA 22201
Phone: (703) 243-3737
Fax: (703) 524-7610
gdoumar@doumarmartin.com

ATTORNEYS FOR PLAINTIFF
Allied International Corp. of Virginia

OF COUNSEL:

David R. Mahdavi, Esq.
Francassi, Mahdavi, Sissman & Rand, LLP
1890 Preston White Drive
Suite 100
Reston, Virginia 20191
Phone: (703) 790-4900
Fax: (703) 790-1676
dmahdavi@fmsrlaw.com